IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MELVIN ANDREW ROACH, JR.,** | : | |
| *Plaintiff* | : | CIVIL ACTION NO. 24-cv-06410 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **CREDIT ACCEPTANCE** | : | |
| **CORPORATION** | : | |
| *Defendant* | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                                         **April 2, 2025**

Plaintiff Melvin Andrew Roach, Jr. initiated arbitration proceedings against Defendant Credit Acceptance Corporation ("Credit Acceptance") for breach of contract, a violation of the Truth in Lending Act ("TILA"), and fraud. On December 11, 2024, the Arbitrator issued his Final Award. Plaintiff now moves to vacate the award, ECF No. 2 ("Mot. to Vacate"), and Defendant Credit Acceptance moves to confirm the award.[1] ECF No. 5 ("Mot. to Confirm"). The parties do

---

[1] Additionally, Mr. Roach filed a motion to proceed *in forma pauperis* on November 28, 2024. ECF No. 1. The Court denied the motion on December 16, 2024 on the ground that Mr. Roach's motion maintained that he was self-employed but did not contain any information regarding his business assets or expenses. ECF No. 4. On January 28, 2025, Mr. Roach filed a motion for reconsideration of the Court's denial of the motion to proceed *in forma pauperis*. ECF No. 7. The Court subsequently requested that Mr. Roach file, under seal, his 2023 Federal Income Tax Return so the Court could evaluate Mr. Roach's business assets. ECF No. 9. In response, Mr. Roach filed a "Wage and Income Transcript." ECF No. 14. The Court takes judicial notice of the language on the IRS.gov website explaining that Tax Return Transcripts and previously filed Federal Income Tax Returns are available upon request. *See* "Transcript types for individuals and ways to order them," IRS.gov (last accessed Mar. 14, 2025), https://www.irs.gov/individuals/transcript-types-for-individuals-and-ways-to-order-them; *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (noting that a court may take judicial notice of information published on a government website). Because Mr. Roach failed to file his 2023 Federal Income Tax Return (with all Schedules) as ordered, the Court does not possess an adequate basis for reconsidering the motion to proceed *in forma pauperis*. Accordingly, the Court will deny the pending motion for reconsideration.

not dispute the Court's jurisdiction to confirm or vacate the arbitration award pursuant to the FAA. For the reasons set forth below, the Court will deny Plaintiff's motion to vacate the award and grant Defendant's motion to confirm the award.

## I. BACKGROUND

### A. The Contract and Complaint[2]

Plaintiff Roach financed the purchase of a used 2017 Chevrolet Cruze on September 24, 2020 by entering into a Retail Installment Contract (the "Contract") with Zezo Auto Sales LLC. ECF No. 5-2 Exhibit A ("Final Award") at 3. In addition to the Contract, Mr. Roach signed a Credit Acceptance Corporation Disclosure Form, which "advised Claimant that the Dealer assigned the Contract to Credit Acceptance and that Credit Acceptance would be servicing" his account. ECF *Id.* at 3–4. The Contract was subsequently assigned to Defendant Credit Acceptance. *Id.* at 4.

Under the terms of the Contract, Mr. Roach agreed to make an initial $500.00 payment on October 8, 2020, and 66 monthly payments of $505.88 thereafter. *Id.* However, after Mr. Roach made his initial payment, his subsequent payments were reversed for insufficient funds. *Id.*

On December 27, 2020, Mr. Roach's vehicle was involved in an accident and declared a total loss by his insurance company. *Id.* Insurance proceeds totaling $10,450.46 were applied to his account, as well as credits and rebates totaling $12,688.58, but a balance of $10,249.04 (plus interest) remained. *Id.* Mr. Roach has since failed to pay the balance owed on his account.

### B. Arbitration Proceedings and Award

On October 6, 2023, Mr. Roach initiated arbitration proceedings before JAMS, and filed an Amended Claim on November 16, 2023. *Id.* at 5. In his Amended Claim, Mr. Roach asserted violations of TILA and claims for breach of contract and fraud. *Id.* In addition, Mr. Roach sought

---

[2] The Court incorporates facts pulled from the "Undisputed Facts" and "Procedural History" sections of the Final Award at ECF No. 5-2.

rescission of the Contract and monetary damages. *Id.* On December 11, 2023, Credit Acceptance filed an Answer with Affirmative Defenses and a corresponding Counterclaim. *Id.*

According to the Final Award, Mr. Roach failed to participate in multiple scheduling conferences and to comply with the discovery requirements set forth in the arbitrator's scheduling orders. *Id.* However, Mr. Roach ultimately filed a timely response to Credit Acceptance's Motion for Summary Disposition on October 15, 2024, and the Arbitrator issued a Final Award on December 11, 2024, dismissing each of Mr. Roach's claims and awarding Credit Acceptance the outstanding balance, plus interest and attorney's fees. *Id.* at 5–6, 12. The Arbitrator's findings are summarized below.

1. *Violation of TILA and Federal Regulations*

Mr. Roach first alleged that the Contract contained a defective TILA disclosure, as there was an "unspecified issue" relating to the finance charge. *Id.* at 6. Mr. Roach then asserted in his response to the Motion for Summary Disposition that, without his knowledge, the Contract had been securitized in violation of TILA. *Id.* at 6.

First, the Arbitrator found that the Contract contained a "completed TILA disclosure with no apparent omissions or inaccuracies" on the Contract's face, therefore barring Mr. Roach from pursuing a claim against Credit Acceptance as the assignee of the Contract. *Id.* at 7. As to Mr. Roach's second argument, the Arbitrator found that there was no evidence in the record that the Contract was securitized, and that even if it had been, Mr. Roach's agreement with Credit Acceptance would not have been "impacted in any meaningful manner by that securitization." *Id.* at 8. The Arbitrator further explained that "the TILA does not mandate a creditor disclose that a contract might be securitized in the future," nor does it "provide a right to rescind an auto financing transaction." *Id.* Finally, the Arbitrator found Mr. Roach's TILA claim time barred, because it was

3

not brought within one year of "the date of the violation," that is, the day Mr. Roach financed his vehicle. *Id.* at 8–9.

The Arbitrator further found Mr. Roach's claims regarding violations of federal regulations to lack merit. In sum, the Arbitrator found that Mr. Roach could not pursue a claim under:

- 17 C.F.R. § 248.1(a), because Credit Acceptance is not registered with the Securities and Exchange Commission;
- 12 U.S.C. § 83(a), because Credit Acceptance is not a national bank;
- 16 C.F.R. 433.1(d), which simply provides the definition of the term "purchase money mortgage" and does not create an obligation or right of action;
- 28 C.F.R. 16.53, which governs the Department of Justice's use and collection of personal social security numbers; and
- 42 U.S.C. 408(a)(8), which is a criminal statute that does not provide for a private cause of action.

*Id.* at 9–10.

### 2. *Breach of Contract*

The Arbitrator applied New Jersey law in finding that Mr. Roach failed to "produce any evidence of record to support a breach of the" Contract by Credit Acceptance. *Id.* at 10.

### 3. *Fraud*

Like the breach of contract claim, the Arbitrator applied New Jersey law to find that Mr. Roach "failed to produce any evidence that supports any of the necessary elements of a claim for fraud." *Id.* at 11.

### 4. *Respondent's Counterclaim*

The Arbitrator found that Mr. Roach's failure to (1) make any of his 66 monthly payments as required by the Contract and (2) pay the outstanding balance due to Credit Acceptance in the

4

amount of $10,249.04 constituted a breach of "the terms and conditions of the" Contract. *Id.* Accordingly, the Arbitrator determined that "Judgement shall be entered in favor of Credit Acceptance and against [Mr. Roach] on [Credit Acceptance's] counter claim in the amount of $10,249.00 plus interest at the rate of 6% per annum." *Id.* The Arbitrator further awarded Credit Acceptance attorney's fees in the amount of $5,175.00 per the terms of the Contract. *Id.* at 12.

### C. Cross-Motions to Vacate and Confirm the Arbitration Award

Mr. Roach moved before this Court on November 28, 2024 to vacate the interim arbitration award entered on November 14, 2024, arguing procedural irregularities and legal errors. Mot. to Vacate at 1. Credit Acceptance cross-moved to confirm the Final Award on December 30, 2024 as part of its response to the motion to vacate. Mot. to Confirm at 14–15.

## II. STANDARD OF REVIEW

The Court's review of an arbitration award "could be generously described only as extremely deferential." *Dluhos v. Strasberg*, 321 F.3d 365, 372 (3d Cir. 2003). There exists a "strong federal policy in favor of commercial arbitration," and a court tasked with reviewing an arbitration award must "begin with the presumption that the award is enforceable." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012). Indeed, a court may vacate an arbitration award only for the reasons defined in Section 10 of the Federal Arbitration Act, namely, if:

1. "the award was procured by corruption, fraud, or undue means;

2. there was evident partiality or corruption in the arbitrators, or either of them;

3. the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

5

    4. the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

9 U.S.C. § 10.  Apart from those enumerated in Section 10, Courts have promulgated two additional grounds for vacating an arbitration award: (1) public policy and (2) manifest disregard of federal law.  *See Dluhos*, 321 F.3d at 370 (manifest disregard); *Serv. Emps. Int'l Union Loc. 36 v. City Cleaning Co.*, 982 F.2d 89, 92 (3d Cir. 1992) (public policy).[3]  "In sum, when parties agree to resolve their disputes before an arbitrator without involving the courts, the courts will enforce the bargains implicit in such agreements by enforcing arbitration awards absent a reason to doubt the authority or integrity of the arbitral forum."  *Sutter*, 675 F.3d at 219.

Accordingly, the Court must not "correct factual or legal errors made by an arbitrator," nor should it "re-weigh the evidence to decide whether to vacate the award."  *Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F. Supp. 2d 505, 510 (E.D. Pa. 2008) (citing *Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004)).  Instead, the Court shall "uphold an award even if the arbitrator engaged in improvident, even silly, factfinding."  *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 296 (3d Cir. 2010) (internal quotations omitted), *as amended* (Dec. 7, 2010).  Indeed, "an arbitrator's decision need be neither wise nor internally consistent" to be confirmed.  *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1297 (3d Cir. 1996).

---

[3] Whether these grounds continue to serve as a basis for vacatur remains in question since the Supreme Court's decision in *Hall Street*.  *See Caputo v. Wells Fargo Advisors, LLC*, No. 20-3059, 2022 WL 1449176, at *2 n.11 (3d Cir. May 9, 2022) ("[W]e have not yet weighed in on whether these grounds for vacatur survive the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*") (citing to *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)).  However, like the Third Circuit suggested in *Caputo*, this Court will presume "that these grounds continue to exist as a basis for vacatur after *Hall Street*."  *Id.* (internal quotations omitted).

### III.   DISCUSSION

In his motion, Plaintiff argues that the arbitration award must be vacated on the grounds of (1) arbitrator misconduct, (2) a misapplication of TILA, (3) a violation of procedural fairness, and (4) evidence of partiality and due process violations.  Mot. to Vacate at 3–6.  For the reasons that follow, the Court declines to vacate the arbitration award, and will instead confirm the award pursuant to 9 U.S.C. § 9.  Additionally, the Court declines to review Mr. Roach's claims *de novo*.

#### A.  Motion to Vacate

Plaintiff's arguments in support of his motion to vacate lack merit.  Accordingly, the Court will decline to vacate the arbitration award.

##### 1.  *Arbitrator Misconduct*

Plaintiff argues that "the arbitrator's refusal to permit discovery into the securitization and financing arrangements of Petitioner's loan deprived him of the opportunity to substantiate claims under TILA."  Mot. to Vacate at 3.  An award may be vacated pursuant to § 10(a)(3), which proscribes arbitrator misconduct, if the arbitrators "were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy."  9 U.S.C. § 10(a)(3).  Yet mere error on the Arbitrator's part is not enough for vacatur—an error must be "in bad faith or so gross as to amount to affirmative misconduct."  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987).  Indeed, an error must "not simply [be] an error of law, but one which so affects the rights of a party that it may be said that he was deprived of a fair hearing."  *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 120 (3d Cir. 2016).  Similarly, the presence of "procedural irregularities so prejudicial that they result in fundamental unfairness" in the record would provide further grounds for vacatur.  *Id.* (quoting *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 995 (3d Cir. 1997)).

Here, Mr. Roach proffers no reason for vacatur under § 10(a)(3) aside from a conclusory argument that the Arbitrator refused to hear evidence relating to the securitization of the Contract.

7

To the contrary, the Final Award makes clear that it is "undisputed" that Mr. Roach failed to attend the relevant scheduling conferences in the arbitration proceeding, and "to comply with any of the discovery requirements set forth in the [] scheduling orders." Final Award at 5. Mr. Roach was given the opportunity to buttress his securitization argument by seeking discovery from Credit Acceptance and ostensibly chose not to do so. He did, however, take advantage of the arbitration process by filing papers in accordance with the scheduling order. Thus, the Court does not find a procedural irregularity in Plaintiff's ultimate failure to make use of the arbitration discovery period. His non-compliance with the scheduling order and accompanying discovery deadlines cannot be blamed on the Arbitrator.

In addition, Plaintiff argues that the Arbitrator "refused to explore" evidence of securitization. Mot. to Vacate at 4. However, the Arbitrator clearly stated in the Final Award that "there is no evidence of record that the contract was securitized." Final Award at 7. In other words, the Arbitrator looked to the record for evidence of securitization and found none. Such an approach cannot be deemed a "refusal to address" when the Arbitrator addressed the record and conducted a reasoned analysis of Plaintiff's claims based on the information contained therein.

As a result, the Court declines to vacate the arbitration award under § 10(a)(3) for the Arbitrator's argued failure "to permit discovery" into and "refus[al] to explore" Plaintiff's securitization argument.

2. *Misapplication of Law*

Plaintiff next argues that the arbitrator engaged in a "fundamental misapplication" of TILA. Mot. to Vacate at 5. The Court will liberally construe this ground for vacatur as a "manifest disregard" of federal law. *See Dluhos*, 321 F.3d at 370. However, a "manifest disregard" of the law is distinct from "an erroneous interpretation of the law." *Bellantuono v. ICAP Secs. USA, LLC*,

557 F. App'x 168, 174 (3d Cir. 2014) (quoting *Dluhos*, 321 F.3d at 369). For a court to find that a manifest disregard of federal law occurred, "the arbitrators' decision must fly in the face of clearly established legal precedent, such as where an arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *Whitehead*, 811 F.3d at 121 (cleaned up). In other words, the arbitrator must display a "willful flouting of known, governing law." *Paul Green Sch. of Rock Music Franchising, LLC. v. Smith*, 389 F. App'x 172, 178 (3d Cir. 2010). The alleged manifest disregard "must appear clearly in the record of the arbitration, and there must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Royal Bank Am. v. Kirkpatrick*, No. CIV.A. 11-1058, 2011 WL 4528349, at *4 (E.D. Pa. Sept. 30, 2011).

      Here, Plaintiff's mere disagreement with the Arbitrator's application of the law does not arise to the level of "manifest disregard." *See Anoruo v. Tenet HealthSystem Hahnemann*, 697 F. App'x 110, 112 (3d Cir. 2017) ("[A] mere disagreement with the arbitrator's findings and conclusions…. is not a proper basis on which to vacate an arbitration award."). The Arbitrator identified the relevant law applicable to Mr. Roach's TILA claims. *See* Final Award at 6–9. He acknowledged and addressed both Mr. Roach's argument that the TILA disclosure in the Contract was defective and that the Contract was securitized. *See id.* at 7–8. After assessing each argument, the Arbitrator found that: (1) there was no TILA violation on the face of the Contract, and therefore Credit Acceptance could not be held liable as an assignee; (2) there was no evidence to support the securitization claim, and even had the contract been securitized, it would not have impacted the Parties' rights in any meaningful way, nor would the prospective securitization of the Contract be grounds for rescission; and (3) the TILA claim was time barred with no basis for equitable tolling. *Id.* at 6–9.

The Court cannot find that the Arbitrator flouted the law in such a way as to constitute a "manifest disregard" under these circumstances. Accordingly, the Court declines to vacate the award under this doctrine.

### 3. *Violation of Procedural Fairness*

Mr. Roach next argues that "[t]he arbitrator improperly relied on unsworn factual assertions made by Respondent's counsel" in reaching his decision, "undermin[ing] the fairness of the arbitration process." Mot. to Vacate at 5–6. Assuming that Mr. Roach intends once more to argue misconduct by the Arbitrator under § 10(a)(3), the Court incorporates the principles guiding its analysis above, *supra* Section III.A.1.

Here, it is not apparent from the face of the Final Award that the Arbitrator relied on unsworn factual assertions in reaching his decision. The Arbitrator explained up front that the Final Award was decided based "upon consideration of the Respondent's Motion for Summary Disposition and the Claimant's response thereto, and upon consideration of the record produced and the briefs in support thereof." Final Award at 3. While Plaintiff requests that the Court heed "the precedent established in *Trinsey v. Pagliaro*, 229 F. Supp. 647 (E.D. Pa. 1964)," likely referring to the principle that "[s]tatements of counsel in their briefs or argument…are not sufficient for purposes of granting…summary judgment," the Final Award clearly reflects a thorough analysis and consideration of the record separate and apart from Defendant's briefing. *Trinsey*, 229 F. Supp. at 649; Mot. to Vacate at 5–6. Accordingly, the Court declines to vacate on the ground of procedural unfairness under § 10(a)(3).

### 4. *Evidence of Partiality and Due Process Violations*

Finally, Mr. Roach argues that "[t]he arbitrator demonstrated evident partiality by enforcing procedural deadlines against Petitioner while disregarding Respondent's obligations," and that

"[t]his disparate treatment…deprived Petitioner of a meaningful opportunity to present his case." Mot. to Vacate at 6. Section 10(a)(2) of the FAA permits vacatur "where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). Granting vacatur for partiality requires that the movant demonstrate "circumstances powerfully suggestive of bias" such that "a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration." *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir. 1994) (internal quotes and citations omitted). Put simply, the movant must show "actual bias" by the arbitrator, rather than merely the appearance of bias. *See Stone v. Bear, Stearns & Co., Inc.*, 872 F. Supp. 2d 435, 446–47 (E.D. Pa. 2012).

Again, Mr. Roach's motion is devoid of any reference to deadlines that the Arbitrator enforced against him but not against Credit Acceptance. The Final Award explains that Mr. Roach complied with the established briefing schedule during the Summary Disposition phase of the arbitration. Final Award at 5. Without more, the Court declines to vacate the arbitration award on grounds of partiality.

### B. Motion to Confirm

Having denied the motion to vacate the arbitration award, the Court "must" confirm the award. *See* 9 U.S.C. § 9. Credit Acceptance's cross-motion to confirm the arbitration award is therefore granted.

### C. Reviewing Award *De Novo*

The Court need only briefly address Mr. Roach's request that it review the instant case *de novo*. In his motion to vacate, Plaintiff cites to 28 U.S.C. § 1331, contending that the "procedural deficiencies and substantive due process violations in arbitration" warrant *de novo* review in federal court. Mot. to Vacate at 7. Under section 1331, "[t]he district courts shall have original

11

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

It appears that Mr. Roach would have the Court review his claims from scratch because he is unhappy with the outcome of the arbitration. However, as Mr. Roach himself recognizes, Mr. Roach "entered arbitration in good faith." Mot. to Vacate at 2. Both Mr. Roach and Credit Acceptance litigated the arbitration claims through a final disposition. Final Award at 5–6. The Court's current role in the dispute is exceedingly narrow—specifically, its role is to confirm the award and enter judgment, vacate the award, or modify the award. 9 U.S.C. § 9. The Court has decided, upon a thorough review of the Final Award and the Parties' briefing, to confirm the award and enter judgment. It sees no reason to stray from the mandate of Section 9 of the FAA. Accordingly, the Court denies Mr. Roach's request that the Court review the case *de novo*.

### IV.   CONCLUSION

Mr. Roach has not cleared the high bar necessary to vacate the arbitration award. As a result, Mr. Roach's petition to vacate the award is **DENIED**, and Credit Acceptance's cross-motion to confirm the award is **GRANTED**. The Court will also, pursuant to 9 U.S.C. § 13, enter judgment in favor of Credit Acceptance as set forth in the Final Award. An appropriate order follows.

BY THE COURT:

/s/ CHAD F. KENNEY

**CHAD F. KENNEY, JUDGE**